PAULA VANCE, f/k/a Paula Chandler, Plaintiff-Appellant, v. MORTON ROSS CHANDLER *et al.*, Defendants-Appellees.

Third District   No. 3—91—0769

Opinion filed July 22, 1992.

Franklin S. Wallace and David L. Cunningham, both of Winstein, Kavensky & Wallace, of Rock Island, for appellant.

Duane Thompson, of Braud/Warner, Ltd., of Rock Island, for appellees.

JUSTICE McCUSKEY delivered the opinion of the court:

Plaintiff, Paula Vance, formerly Paula Chandler, appeals the dismissal of her amended complaint. The issues presented are: (1) whether plaintiff stated causes of action for civil conspiracy and intentional infliction of emotional distress, and (2) whether those causes of action were barred by principles of *res judicata* and collateral estoppel.

We reverse the trial court's dismissal of plaintiff's amended complaint and remand because we find the plaintiff has sufficiently stated causes of action for civil conspiracy and intentional infliction of emotional distress. We do not find either cause of action is barred by *res judicata* or collateral estoppel.

The essence of plaintiff's action is that she "suffered emotional distress and monetary damages" as a result of defendants' conspiracy to murder her. The first two counts of plaintiff's six-count amended complaint sought compensatory and punitive damages for the tort of civil conspiracy from plaintiff's former husband, Morton Ross Chandler (Morton). In the remaining counts, plaintiff alleged causes of action against her daughter, Heidi Chandler (Heidi), and Morton which sought compensatory and punitive damages for intentional infliction of distress.

Specifically, plaintiff alleged that while she and her husband Morton were involved in divorce proceedings, Morton had twice approached Walter Foster about hiring someone to kill her. Following the second conversation, Foster contacted an individual who supplied the name of a person who would murder the plaintiff. Foster then made the necessary arrangements with that individual to perform the murder of the plaintiff.

The plaintiff alleged in her amended complaint that Heidi "joined in and aided [the] conspiracy by driving *** Foster to various places when he was attempting to and did hire someone to kill the plaintiff."

Plaintiff said she "went into hiding" on July 28, 1989, when she was advised by law enforcement officials that someone was trying to kill her. Plaintiff alleged that while she was "in hiding," she was unable to perform her regular duties and activities, and that she became

"extremely fearful for her life, safety, health and welfare." Plaintiff further alleges that even now she remains in fear of being killed.

On August 3, 1989, Morton paid the alleged killer for his services, believing that plaintiff had been murdered. The record shows that the "hired gun" was actually an undercover police officer. Later, Morton and Heidi were arrested, and both pled guilty to conspiracy to commit first degree murder.

Defendants filed motions to dismiss plaintiff's amended complaint pursuant to sections 2—615 and 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, pars. 2—615, 2—619). The trial court granted the motions, finding that plaintiff had failed to state causes of action for civil conspiracy and intentional infliction of emotional distress.

■■ A civil conspiracy involves two or more persons combining to accomplish either a lawful purpose by unlawful means or an unlawful purpose by lawful means. (*Smith v. Eli Lilly & Co.* (1990), 137 Ill. 2d 222, 235, 560 N.E.2d 324, 329.) The necessary elements of civil conspiracy include: (1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties; and (4) the overt act was done pursuant to and in furtherance of the common scheme. *Wolf v. Liberis* (1987), 153 Ill. App. 3d 488, 496, 505 N.E.2d 1202, 1208.

■■ We note the defendants concede in their brief that plaintiff's amended complaint does satisfy the first two elements of a *prima facie* case of civil conspiracy. However, defendants interpret the remaining elements of civil conspiracy to require allegations of an unlawful, overt act *which must itself* be independently actionable in tort. We disagree. Quoting American Jurisprudence 2d, this court in *Illinois Traffic Court Driver Improvement Educational Foundation v. Peoria Journal Star, Inc.* (1986), 144 Ill. App. 3d 555, 562, 494 N.E.2d 939, 944, noted that " 'in a civil action based on a conspiracy, no cause of action can exist in the absence of an overt, tortious, *or* unlawful act committed in furtherance of the conspiracy.' (16 Am. Jur. 2d, Conspiracy sec. 51.)" (Emphasis added.) The conjunctive *"or"* in this passage indicates *alternatives* in a series and not, as defendants argue, cumulative requirements of the tort. Therefore, we hold that an alleged overt or unlawful act need not be tortious or otherwise actionable in tort to support a cause of action for civil conspiracy.

In the instant case, we find the plaintiff's allegations which describe the conspirators' actions in soliciting, hiring and paying an individual to murder the plaintiff are acts which clearly qualify as *unlaw-*

*ful* acts. Furthermore, those same acts also qualify as *overt* acts. An "overt act" is defined as "[a]n outward act done in pursuance and manifestation of an intent or design." (Black's Law Dictionary 1104 (6th ed. 1990); see also *People v. Mudd* (1987), 154 Ill. App. 3d 808, 820, 507 N.E.2d 869, 878 (Lund, J., dissenting).) We find nothing in the definition of "overt act" which requires that the act be tortious, unlawful, or otherwise independently actionable. Therefore, we find the defendants' argument is misplaced.

■ Defendants also argue the plaintiff's alleged injury was caused not by defendants, but by the law enforcement officials who informed her of the threat on her life. We consider this argument also to be misplaced. Defendants' liability should not turn upon the *source* of plaintiff's information. The result should be the same whether the plaintiff is informed of the plot by a third party or whether she herself happens to overhear one of the conspirators. It is the *knowledge* of the plot, not the source of that information, which provides the causation for plaintiff's alleged injuries.

■ We also find plaintiff has alleged sufficient facts to state a cause of action for intentional infliction of emotional distress. The elements of the tort are:

> "First, the conduct involved must be truly extreme and outrageous. Second, the actor must either *intend* that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress. Third, the conduct must in fact cause *severe* emotional distress." (Emphasis in original.) (*McGrath v. Fahey* (1988), 126 Ill. 2d 78, 86, 533 N.E.2d 806, 809.)

The court in *McGrath* emphasized that the question of whether a defendant's conduct is extreme and outrageous must be determined in view of all the facts and circumstances pleaded and proved in a particular case. *McGrath*, 126 Ill. 2d at 90, 533 N.E.2d at 811.

Clearly, we find the alleged conduct of the defendants is sufficiently outrageous in character and extreme in degree to satisfy the first element of the tort of intentional infliction of emotional distress. We note the defendants do not argue this point. Defendants do argue, however, that the plaintiff has failed to allege any facts establishing either: (1) the defendants intended to cause plaintiff's emotional distress, or (2) that defendants recklessly disregarded the risk of causing plaintiff's emotional distress. Defendants maintain they were *not* involved in a conspiracy to cause plaintiff emotional distress, but merely in a conspiracy to cause her death. Defendants further argue they neither intended to, nor in fact did, convey their murderous intent to

plaintiff. Defendants argue that the plaintiff's complaint alleges it was the law enforcement authorities, not the defendants, who advised plaintiff of the plot to kill her. We cannot agree with defendants' analysis.

■ We accept plaintiff's argument that the defendants' reckless disregard for the possibility that the plaintiff would learn of the plan establishes the second element of the tort for intentional infliction of emotional distress. Liability for emotional distress "applies also where [the defendant] acts recklessly, *** in deliberate disregard of a high degree of probability that the emotional distress will follow." (Restatement (Second) of Torts §46, Comment *i*, at 77 (1965).) The defendants' numerous dealings with third parties clearly enhanced the risk that word of the conspiracy would fall into the "wrong" hands and ultimately cause the plaintiff to learn of the plot. With each additional person brought into the conspiracy and informed of the conspiracy, the defendants ran the risk that someone would either inadvertently expose the plan or, as it turns out, inform the police.

As for the final element of the tort for intentional infliction of emotional distress, we find the plaintiff has pleaded facts sufficient to demonstrate that she suffered severe emotional distress as a result of defendants' conduct. According to her amended complaint, plaintiff became "extremely fearful for her life, safety, health and welfare" and that she suffered "great emotional distress." Although plaintiff's allegations of her emotional distress are not extensive, they are sufficient to establish, at the pleading stage, that her emotional distress was indeed severe.

The trial court found that the allegations directed against Morton in plaintiff's amended complaint had been previously considered by the judge in the divorce proceeding which involved Morton and the plaintiff. Therefore, we find the trial court's dismissal was based upon *res judicata*. The plaintiff argues the trial court's dismissal order was in error. We agree.

The doctrine of *res judicata* holds that a final judgment rendered by a court of competent jurisdiction on the merits of a cause of action is conclusive as to the rights of the parties involved. The judgment as to the parties and their privies is an absolute bar to a subsequent action involving the same claim, demand or cause of action. (*Housing Authority v. YMCA* (1984), 101 Ill. 2d 246, 251, 461 N.E.2d 959, 961-62.) The essential elements of *res judicata* are (1) an identity of the same parties or their privies in the two suits; (2) an identity of the same causes of action in the earlier and the later suit; and (3) a final judgment on the merits in the earlier suit. *Best Coin-Op, Inc. v. Paul*

*F. Ilg Supply Co.* (1989), 189 Ill. App. 3d 638, 650, 545 N.E.2d 481, 489.

We find the plaintiff's causes of action against Morton were not barred by the Chandler divorce proceeding. Although the parties are identical, there is not a sufficient identity between the causes of action. In addition, we find the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1989, ch. 40, par. 101 *et seq.*) does not authorize a trial court in a dissolution proceeding to determine the issues now raised in plaintiff's lawsuit. (*In re Marriage of Foran* (1992), 225 Ill. App. 3d 756, 758-59, 587 N.E.2d 570, 572.) The plaintiff in *Foran* had filed a petition for relief from a judgment entered in a divorce proceeding. The plaintiff alleged that his former spouse had transmitted a sexual disease to him and had concealed the fact from him. The appellate court affirmed the trial court's dismissal of the petition, holding that the trial court was not authorized to conduct a separate trial within the dissolution proceeding. The *Foran* court held that the trial court's limited statutory jurisdiction in a divorce proceeding did not confer upon the court the power to decide the tort issue raised in the petition or to determine the amount of any damages owed the plaintiff by his former spouse. (*Foran*, 225 Ill. App. 3d at 758-59, 587 N.E.2d at 572.) The court further stated that "the proper method of obtaining *** relief would be a personal injury action against [his former spouse]." (*Foran*, 225 Ill. App. 3d at 759, 587 N.E.2d at 572.) In the instant case, plaintiff has indeed followed the *Foran* court's recommendation of pursuing her action for damages in tort outside the dissolution proceeding. We do not find the plaintiff's tort action foreclosed.

The related but narrower theory of collateral estoppel applies when a party participates in two separate cases arising from different causes of action, and some controlling fact or question material to the determination of both causes has been adjudicated against that party in the former suit. (*Housing Authority*, 101 Ill. 2d at 252, 461 N.E.2d at 962.) The judgment in the first suit operates as an estoppel only as to the point or question *actually litigated* and determined. (*Housing Authority*, 101 Ill. 2d at 252, 461 N.E.2d at 962.) While the facts underlying the instant tort issues were apparently raised in the dissolution proceedings between plaintiff and Morton, we find from the record that those issues were neither litigated nor determined in the divorce proceeding. Accordingly, we find plaintiff's amended complaint is not barred by collateral estoppel.

The order of the trial court dismissing plaintiff's amended complaint is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

BARRY, P.J., and GORMAN, J., concur.